Scott M. Lesowitz (SBN 261759)
scott@syversonlaw.com
**SYVERSON, LESOWITZ & GEBELIN LLP**
8383 Wilshire Boulevard, Suite 520
Beverly Hills, California 90211
Telephone: (310) 341-3076
Facsimile: (310) 341-3070
Attorneys for Plaintiff Perfect Enterprises, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT ENTERPRISES, INC., | Case No.: 5:19-cv-690 |
| Plaintiff, | |
| vs. | **COMPLAINT FOR:** |
| PAUL OLMEDO, OLMEDO ENTERPRISES, LLC, PM ENTERPRISES INC., and HUGHGO MARK NELSON, | 1. Conversion<br>2. Theft under California Penal Code Section 496<br>3. Breach of Contract<br>4. Violation of the Computer Fraud and Abuse Act<br>5. Trade Secret Misappropriation under 18 U.S.C. § 1836, et seq.<br>6. Trade Secret Misappropriation under the California Uniform Trade Secrets Act |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff PERFECT ENTERPRISES, INC. ("Perfect Enterprises"), by and through its attorneys, and for a complaint against the Defendants Paul Olmedo, Olmedo Enterprises, LLC, PM Enterprises Inc., and Hughgo Mark Nelson, hereby alleges as follows:

## Introduction

1. Defendant Paul Olmedo purported to perform sales and marketing work for Plaintiff Perfect Enterprises. Plaintiff is a company that obtains customer leads for automobile sales via social media pages and phone calls with customers (the phone calls usually originating from social media visitors). Plaintiff then works with various car dealerships to convert those leads into sales. Plaintiff has spent over $1,000,000 on advertising with social media companies to develop traffic to their social media pages.

2. While supposedly working for the benefit of the company, Paul Olmedo spent tens of thousands of dollars of Plaintiff's funds without permission for his personal uses. Defendant has also failed to repay a loan that is due to Plaintiff.

3. Since recently quitting Plaintiff, Paul Olmedo, and another former employee of Plaintiff, Defendant Hughgo Mark Nelson, have run a competing business. On information and belief, the competing business is being run under Defendant PM Enterprises Inc. In running their competing business, Defendants have stolen at least eight social media accounts of Plaintiff and are obtaining valuable customer leads on these pages that should be going to Plaintiff. Also, Defendants took control of Plaintiff's call center in Mexico where the information and contents of all of Plaintiff's customer leads are located. Defendants have been selling these leads and using the leads as a means to take business from Plaintiff. Furthermore, Defendants have been disclosing other trade secrets of Plaintiff in order to both take Plaintiff's existing customers and out-compete Plaintiff for potential customers.

## The Parties

4. Plaintiff Perfect Enterprises is a Wyoming corporation with its principal place of business located in California.

5. Defendant Paul Olmedo is an individual who resides in and is domiciled in Riverside County, California.

6. Defendant Hughgo Mark Nelson is an individual who resides in and is domiciled in Riverside County, California.

7. Defendant Olmedo Enterprises, LLC, is a California limited liability company with its principal place of business in California. At the time of this drafting, Olmedo Enterprises is on suspended status with the California Secretary of State. On information and belief, Defendant Paul Olmedo is the principal and sole member of Olmedo Enterprises, LLC.

8. Defendant PM Enterprises Inc. is a Wyoming corporation with its principal place of business located in the Central District of California.

9. There is federal question jurisdiction.

10. Venue is proper within the Central District of California as Defendants personally reside in the jurisdiction. Moreover, much of Defendants' unlawful conduct, giving rise to Plaintiff's claims, occurred within Los Angeles County and Riverside County.

## PERFECT ENTERPRISES' BUSINESS

11. Souhayl Errama has always been the President and sole member of the Board of Directors of Plaintiff Perfect Enterprises.

12. Since approximately May 1, 2017, Plaintiff has created social media pages, including Facebook pages, that market the sale of cars. People interested in purchasing a vehicle input information on Plaintiff's social media pages. This information often includes personal contact information (cellphone number, e-mail address, and physical address), information regarding what type of vehicle they seek, and the location where they would like to purchase the car. The prospective customers might also call a phone number listed on the social media pages that connected to Plaintiff's call center in Mexico where the callers would provide this information. Plaintiff would sell this

information obtained on the social media pages and telephone (the "Customer Leads") to car dealerships.

13. Plaintiff maintained records of the Customer Leads at its call center in Mexico. Mr. Errama and Plaintiff established the call center. Only Plaintiff's funds were used to build and run the call center. Plaintiff employed and paid the workers at the call center.

14. Plaintiff has always considered the Customer Leads to be confidential and has instructed Defendants and anyone else associated with Plaintiff (including employees of Plaintiff's call centers, sales representatives, and programmers) that the Customer Leads must be kept confidential. The Customer Leads derive independent economic value, actual and potential, from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use. The Customer Leads are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

15. Plaintiff additionally trained the dealerships on how to pitch car sales to Customer Leads. Plaintiff considered its training methods to be confidential and has instructed Defendants and anyone else associated with Plaintiff (including employees of Plaintiff's call centers, sales representatives, and programmers) that the training methods must be kept confidential. The training methods derive independent economic value, actual and potential, from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use. The training methods are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

16. Plaintiff considered its profit margins and underlying data, including operation costs and advertising budgets, to be confidential and has instructed Defendant Olmedo and anyone else associated with Plaintiff (including employees of its call centers, sales representatives, and programmers) that the training methods must be kept confidential. The profit margins and underlying data derive independent economic value,

actual and potential, from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use. The profit margins and underlying data are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

17. Starting in approximately May of 2017, Defendant Paul Olmedo began working at Plaintiff, serving as the company's Chief Marketing Officer. He purportedly performed sales and marketing duties, including marketing campaign creation and management, Call Center management, accounts receivable invoicing, collection, and follow up, and video shooting and editing. He received payment for his services personally and through Olmedo Enterprises, LLC.

## MISUSE OF FUNDS

18. Starting on or about July, 15, 2018, Defendant Paul Olmedo began using his Perfect Enterprises company credit card for his own business endeavors without the knowledge or permission of Mr. Errama. Defendant Olmedo had spent approximately $28,000 of company funds for his own, wholly independent business ventures before Mr. Errama discovered this use.

19. When Mr. Errama discovered Defendant Olmedo's personal use of Plaintiff's funds, Defendant assured Mr. Errama that Defendant Olmedo would shortly cease this activity and would quickly repay the funds.

20. This was false. Defendant Paul Olmedo continued using his Perfect Enterprises company credit card for his own personal business ventures with no intention of repaying the funds and has never repaid any of the funds and has refused to pay the funds. He spent approximately an additional $27,000 for such personal uses.

21. Mr. Errama then demanded that Defendant Paul Olmedo cease making any additional personal purchases. However, Defendant Paul Olmedo continued to use the Perfect Enterprises company credit card for his personal business despite Mr. Errama's demand. After the demand, Defendant Olmedo spent an additional approximately $5,800 for personal endeavors.

22. Defendant has not repaid Plaintiff Enterprises any of these above amounts despite having agreed to repay that amount upon demand and Plaintiff so demanding.

## END OF RELATIONSHIP

23. On February 11, 2019, Defendant Paul Olmedo informed Mr. Errama that Defendant was ending his association with Plaintiff.

24. To the degree Defendant Paul Olmedo was ever an employee or officer of Plaintiff, on or about February 27, 2019, in a duly issued corporate resolution, Plaintiff stripped Defendant Paul Olmedo of his position as an officer and employee. Defendant Paul Olmedo received notification of this on or about February 27, 2019. The notification informed Defendant Paul Olmedo that he could not act on behalf of Plaintiff.

25. Defendant Paul Olmedo remains in possession of equipment owned by Plaintiff and has refused to return it.

## DEFENDANTS' ACTIONS REGARDING SOCIAL MEDIA AND LEADS

26. In March 2019, Defendants seized control of all of the Facebook pages created, run, and owned by Plaintiff. They removed Mr. Errama's access to the pages. Mr. Errama received access back. Defendants then retook control of eight of these pages. Defendants have retained Plaintiff's content on the pages and are diverting Customer Leads for their own financial gain. They have retained and continued using Plaintiff's copyrighted images on these pages.

27. Also, in March 2019, Defendant Paul Olmedo approached the employees who run Plaintiff's call center in Mexico. Defendant Paul Olmedo induced them to stop doing business with Plaintiff, break their contract with Plaintiff, and to begin working for Defendant instead. The head of the call center in fact informed Mr. Errama that the call center worked for Defendant Paul Olmedo now. Thus Defendant Paul Olmedo is in possession of the Customer Leads held at the call center.

28. In addition to using Plaintiff's Customer Leads, Defendants are disclosing and using Plaintiff's dealership training methods and Plaintiff's profit margins for their own gain. Defendants have disclosed Plaintiffs' trade-secret dealership training methods

and profit margin information to dealerships, both current and potential customers of Plaintiff, in order to compete against Plaintiff.

29. Defendants have sold Customer Leads and have used the trade secrets to take current and potential customers from Plaintiff causing Plaintiff financial injury.

## FIRST CAUSE OF ACTION
**(Against Defendants Paul Olmedo and Olmedo Enterprises, LLC for Conversion)**

30. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

31. Defendants Paul Olmedo substantially interfered with Plaintiff's property by intentionally taking possession of Plaintiff's money by using the company credit card for personal uses. Defendant refused to return the money after Plaintiff through Mr. Errama demanded its return. On information and belief, the personal business endeavors were being conducted under Defendant Olmedo Enterprises, LLC.

32. Plaintiff was harmed by Defendants' conversion of its property.

## SECOND CAUSE OF ACTION
**(Against Defendant Paul Olmedo For Penal Code Theft)**

33. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

34. Defendant Paul Olmedo unlawfully withheld stolen property under California Penal Code Section 496(c). He committed theft by unlawfully taking money owned by Plaintiff without permission or by fraud. He had knowledge that the money was stolen as he knew that he was spending money owned by Plaintiff. Despite this knowledge, Defendant used these Perfect Enterprises funds for his own personal or business endeavors. Defendant then withheld, and continues to withhold, the stolen property from Plaintiff when Plaintiff demanded that he repay it.

35. First, without permission, Defendant Paul Olmedo used Perfect Enterprises' credit card for his own personal and business endeavors, including through Defendant

Olmedo Enterprises, LLC, spending an amount of approximately $28,000 without the knowledge or consent of Plaintiff.

36. Second, after Plaintiff discovered the first $28,000 of theft, Defendant Paul Olmedo obtained permission to use the company credit card for personal use by falsely representing that, and on the condition that, he would immediately pay Plaintiff back and that the amounts spent would be small. Instead, he spent an additional approximately $27,000 and refused to pay Plaintiff back for his expenditures using the company card. Plaintiff would not have consented to this use but for Defendant Paul Olmedo's promise to promptly repay.

37. Third, after Mr. Errama demanded that Defendant cease using company funds for personal use, Defendant Paul Olmedo continued to do so. Since Mr. Errama demanded that Defendant cease such expenditures, Defendant spent an additional approximately $5,800 for personal uses including Havoc Bike Co.

38. Defendant was at all times aware that the money he spent using Plaintiff's credit card belonged to Plaintiff. Defendant has withheld the entire approximately $60,800 amount despite Plaintiff demanding that he repay it.

## THIRD CAUSE OF ACTION

**(Against Defendants Paul Olmedo and Olmedo Enterprises, LLC For Breach of Contract)**

39. Plaintiff hereby re-alleges, as if full set forth herein, the allegations of the preceding paragraphs.

40. First, on or about November, 21 2018, Plaintiff and Defendant Paul Olmedo entered into an oral contract in which Plaintiff agreed to loan Defendants Paul Olmedo (even if via a payment to Olmedo Enterprises, LLC) $42,000, and each Defendant agreed to repay that amount upon demand.

41. Plaintiff performed fully on the contract and loaned the Defendants that amount.

42. Defendants Paul Olmedo and Olmedo Enterprises, LLC failed to repay the $42,000 after Plaintiff demanded repayment, thus breaching the agreement.

43. Second, and separately, on or about November 21, 2018, Plaintiff agreed to permit Defendant to use the company credit card for limited personal purposes, and Defendant agreed to immediately repay the amount spent upon demand. Defendant spent $27,000 thereto. Defendant failed to repay the $27,000 after Plaintiff demanded, thus breaching the agreement.

## FOURTH CAUSE OF ACTION

**(Against All Defendants for Violations of The Computer Fraud and Abuse Act, 18 U.S.C. § 1030)**

44. Plaintiff hereby re-alleges, as if fully set forth herein, the allegations of the preceding paragraphs.

45. Defendants violated 18 U.S.C. § 1030(a)(4) by knowingly, and with intent to defraud, accessing and taking over Plaintiff's Facebook pages without authorization by Facebook or Plaintiff.

46. Defendant fraudulently commandeered the Customer Leads discovered on the pages and redirected them for his own financial benefit.

47. Plaintiff spent over $1,000,000 on Facebook advertising in order to generate traffic to their pages and therefore leads. The value of this information is no less than $2.5 million. Defendants have earned well over $5,000 from running the Facebook pages that should have gone to Plaintiffs. Further, by blocking Plaintiff's access to these Facebook pages, Plaintiff lost tens of thousands of dollars in revenues and profits.

## FIFTH CAUSE OF ACTION

**(Against All Defendants For Trade Secret Misappropriation under 18 U.S.C. § 1836, et seq.)**

48. Plaintiff hereby re-alleges, as if fully set forth herein, the allegations of the preceding paragraphs.

49. While employed by Plaintiff and subsequently, Defendants misappropriated trade secrets owned by Plaintiff, including customer lists and information (Customer Leads), pricing structure and margins, costs of obtaining leads and operations, and dealership training methodology.

50. Defendants purposefully acquired these trade secrets and have disclosed and used them in commerce and profited thereby.

51. There is also a significant threat of future misappropriation, use, and disclosure which will lead to irreparable injury to Plaintiff.

52. The information above is related to a product and service used in, and intended for use in, interstate and foreign commerce. Perfect Enterprises is a Wyoming corporation that does business primarily in California. Its customers are located in California. Perfect Enterprises utilizes its call center in Mexico to collect customer information and rout customers to participating dealers. The trade secrets are stored in Mexico and were primarily seized there.

53. Defendant willfully and maliciously misappropriated, acquired, and used each of the trade secrets described herein, allowing Plaintiff to be awarded punitive damages.

54. Plaintiff suffered monetary damages greater than $2,000,000 due to the trade secret misappropriation referred to in this cause of action, and Defendants were unjustly enriched over $2,000,000.

## SIXTH CAUSE OF ACTION

**(Against All Defendants For Trade Secret Misappropriation under the California Uniform Trade Secrets Act)**

55. Plaintiff hereby re-alleges, as if fully set forth herein, the allegations of the preceding paragraphs.

56. The same acts of trade secret misappropriation detailed above make Defendant liable to Plaintiff under the California Uniform Trade Secrets Act, California Civil Code Section 3426, et seq. for the same damages.

## SEVENTH CAUSE OF ACTION

### (Against All Defendants for Copyright Infringement)

57. Plaintiff owns the copyright to the images, writing, and other content it displays on its social media pages.

58. Defendants have engaged in copying of the protected material by taking over Plaintiff's social media pages and using the exact material to engage in their own commercial enterprises for their own profit.

## PRAYER

WHEREFORE, Plaintiff prays for:

1. A monetary judgment in the amounts of:
   a. At least $2,000,000 in damages for trade secret misappropriation against all Defendants.
   b. At least $42,000 for repayment for the breach of the loan contract from Defendants Paul Olmedo and Olmedo Enterprises LLC,
   c. At least $27,000 for breach of contract related to Defendant Paul Olmedo's spending of Plaintiff's funds for personal uses from Defendants Paul Olmedo and Olmedo Enterprises LLC,
   d. At least $60,800 for conversion against Defendants Paul Olmedo and Olmedo Enterprises LLC,
   e. Treble damages on the penal code theft amount of at least $182,400 against Defendants Paul Olmedo and Olmedo Enterprises LLC,
   f. At least $2,500,000 against all Defendants for the CFAA violations,
   g. Reasonable attorneys' fees and costs, and
   h. Anything else the court deems appropriate; and
2. A permanent injunction instructing Defendant as follows:
   a. To turn over all Customer Leads and other trade secrets to Perfect Enterprises and destroy all other copies, and not to use these trade secrets in the future,

    b. To not use or disclose leads any other trade secrets of Perfect Enterprises including information related to profit margins and car dealership training,

    c. To turn over the Facebook pages of Plaintiff to Plaintiff,

    d. To never access Plaintiff's social media pages without due authorization, and

    e. To not use for Defendants business purposes copyrighted material belonging to Perfect Enterprises in an infringing manner.

Dated: April 16, 2019        **SYVERSON, LESOWITZ & GEBELIN LLP**

                          By:   *Scott M. Lesowitz*

                                Scott M. Lesowitz
                                Attorneys for Plaintiff Perfect Enterprises, Inc.

# DEMAND FOR TRIAL BY JURY

Plaintiff Perfect Enterprises, Inc. hereby demands a jury trial in this action on all claims so triable.

Date: April 16, 2019                **SYVERSON, LESOWITZ & GEBELIN LLP**

                                    By:    *Scott M. Lesowitz*

                                           Scott M. Lesowitz
                                           Attorneys for Plaintiff Perfect Enterprises, Inc.